**E. A. LABORATORIES, Inc., v. SMITH & GREGORY OF NEW YORK, Inc.**

No. 7927.

District Court, E. D. New York.

Dec. 28, 1936.

Duell & Kane, of New York City (Holland Duell and David S. Kane, both of New York City, of counsel), for plaintiff.

Henry R. Ashton, of New York City (Harold Olsen, of Minneapolis, Minn., of counsel), for defendant.

CAMPBELL, District Judge.

This is a suit for the alleged infringement of patent No. 2,032,786 issued to John M. Aufiero, assignor to E. A. Laboratories, Inc., for heater dated March 3, 1936, on an application filed June 19, 1934.

The plaintiff, E. A. Laboratories, Inc., is a New York corporation engaged in the manufacture and sale of automobile accessories, and has its factory and offices in Brooklyn, N. Y., within the Eastern District of New York.

The defendant, Smith & Gregory of New York, Inc., is a retail selling organization for automobile accessories maintaining a place of business within the Eastern District of New York. It is a distributor of automobile heaters alleged to infringe and which are manufactured by Tropic-Aire, Inc., of Minneapolis, Minn., a Delaware corporation.

Tropic-Aire, Inc., is openly defending this action on behalf of its customer, the defendant, Smith & Gregory of New York, Inc.

The defendant interposed an answer setting up the defenses of invalidity and noninfringement.

On the trial the defendant was allowed to amend its answer by setting up, as an additional ground of invalidity of the patent in suit, that the patentee, John M. Aufiero, was not the original inventor thereof but that, on the contrary, the invention, if any, was made by Mr. Toepel.

The patent in suit relates to hot water heaters for automobiles.

The hot water heaters of the type sold by the plaintiff and defendant, and claimed to be covered by the patent in suit, are constructed of a core which is in effect a miniature radiator of the type located in front of the automobile engine to cool the water in the circulating system. This core is inclosed in a casing to prevent the radiation of heat therefrom, and the casing, in turn, has shutters or heat deflectors that can be opened to any desired position. A small electric fan is provided behind the heater. As air is blown across the core, it is heated, and the shutters or deflector plates send this heated air in whatever direction suits the comfort of the user. By shutting off the fan and closing the shutters, or deflector plates, very little heat is given off by the heater. The heating casing has supporting brackets by means of which the heater is mounted. The heater is so constructed and designed as to be mounted within a car body in either a vertical or horizontal position.

Both plaintiff and defendant sell most of their heaters to individual car owners to be installed as extra equipment, as only a relatively small number are installed by car manufacturers.

The first heaters manufactured and continuing through 1933 had a core with headers at each end, a water inlet pipe connected to the center of one of the headers, and a water outlet pipe connected to the center of the other of the headers. The heater was designed to be installed with the headers at the top and bottom, or in what has been referred to in the record as a vertical position. Flexible tubing coupled the heater to the water cooling system of the car, and the hot water in that system, in turn, circulated through the heater.

On the first appearance of heaters of this type car bodies provided ample space on the dashboard for installation in the, so called, vertical position; but as stream lining and refined car designs came into vogue it became difficult to find in certain cars space on the dash to accommodate a vertically arranged heater, and the heater was mounted on its side. A trial of the heater mounted horizontally, that is, on its side, showed that pockets of air collected in the heater cores above the level of the inlet and outlet openings, greatly impairing its efficiency and in some instances of pronounced air-locks, causing it to cease functioning, and rendering it useless for the purpose intended. Due to the additional accessories designed for mounting on the dashboard of a modern car, to make a heater commercially acceptable it must be designed for universal mounting, and with comparative flexibility of mounting.

In the present satisfactory construction the heater is provided with bracket mountings, by which the heater will be supported in either a vertical or horizontal position, and with inlet and outlet openings positioned in diagonally opposite corners of their respective headers, thus, regardless of the position of mounting, causing them to remain at the upper and lower ends of the heater in different horizontal planes.

This suit is based on only one claim of the patent in suit, that is, claim 8, which reads as follows:

"8. A heater structure to be mounted to have its parts extend in given directions or to have those parts axially turn in directions at right angles to the given directions, and such heater structure including a pair of spaced heads, a heat distributing structure interposed between and connected to said heads, said heads—with said heater

structure disposed in one position—extending in different horizontal planes, and one of said heads being formed with an opening adjacent its left hand end while the other of such heads is formed with an opening adjacent its right hand end whereby, if the structure is shifted, such openings will still occupy different horizontal planes."

Our concern is only with that part of the structure which is covered by that claim.

The heater described is of conventional construction, and includes a pair of spaced headers with a radiator between them, and inlet and outlet openings located in the diagonally opposite corners of the headers.

The claim does not mention the usual casing surrounding the heater, or the motor and fan assembly connected to the back of the heater by the more or less conventional form of shroud, or of the brackets for securing the heater to the dash of an automobile, or of the deflectors or shutters located in the front of the heater, or of the manner and means for connecting the heater to the cooling system of the car.

The sole question involved in this suit is one of validity as the defendant would undoubtedly infringe if the patent is valid.

The defendant offered in evidence the three following patents set up in the answer in support of the defense of anticipation: Patent No. 1,879,072 to Vernon J. Butterfield, assignor to Tropic-Aire, Inc., for heating apparatus for automotive vehicles granted September 27, 1932. Patent No. 1,717,327 to Aloysius T. Sponar, assignor to John Wood Manufacturing Company, for air-heating apparatus granted June 11, 1929. Patent No. 1,714,695 to William A. Rowe, assignor mesne assignments to American Blower Corporation, for air-heating apparatus granted May 28, 1929.

The certified copy of the file wrapper and contents of the Butterfield patent 1,879,072, which was offered in evidence, established the filing date as February 20, 1929.

Fig. 3 of the Butterfield patent discloses a hot water heater for automobiles comprising a pair of spaced headers 19 and 21 connected by a heat distributing structure or radiator comprising water circulating pipes 18 and air circulating pipes 16. An opening for a pipe 20 is shown in the right-hand corner of the upper header 19, and an opening for a pipe 22 is shown in the left-hand corner of the lower header 21.

The Sponar patent 1,717,327 shows an air heater apparatus which comprises two radiator units 10 of cellular construction having inlet openings 11 and outlet openings 12 located as described in the specification as follows:

"I have shown two such cellular structures 10, each having an inlet port 11 near the bottom and one end thereof and an outlet port 12 near the top, and other end thereof, for ingress and egress, of the heating medium which, as above contemplated, may be water or steam, supplied from a suitable heater.

"Said inlets 11 and outlets 12 are preferably located at respectively opposite ends of said cellular structures 10, so as to insure that the heating medium traverses the entire space 13 which surrounds the congeries of individual tubes 14." Page 1, line 96, to page 8, line 2.

The Rowe patent 1,714,695 shows an air heater apparatus which includes a pair of spaced heads 3, 3, Fig. 6 of which there is illustrated in front view a heating structure with the inlet pipe 11 entering the upper end of the left-hand header 3 and the outlet pipe 12 connected to the lower end of the right-hand header 3. This is described in the specifications as follows:

"One of the headers is provided near its upper part with an inlet 8 for connection with any suitable source of steam or other suitable heating fluid supply, and the other header 3 has an air outlet 9 at its lower part for connection with any suitable form of drain system, preferably a vacuum system, not shown, for carrying off the water or condensation. The headers 3 at the inlet 8 and the outlet 9 are equipped with threaded nipples Lo for connection with feed pipe 11 and an exhaust pipe 12. * * *" Page 1, line 102, to page 2, line 9.

I cannot find anticipation by these patents, but they do form part of the prior art, and this is true notwithstanding the fact that the Rowe and Sponar patents relate to house heaters, whereas the patent in suit is for an automobile heater.

House heaters are strictly analogous to automobile heaters. Tropic-Aire, Incorporated, v. Wildermuth (C.C.A.) 64 F.(2d)

342; Tropic-Aire, Incorporated, v. Sears, Roebuck & Co. (C.C.A.) 44 F.(2d) 580.

In Tropic-Aire, Incorporated, v. Wildermuth, supra, the Circuit Court of Appeals of this circuit held that the Caesar patent there in issue (the basic patent owned by Tropic-Aire, Inc.) was nothing more than a small Modine heating unit.

The Modine heating unit was a house heater.

In Tropic-Aire, Incorporated, v. Sears, Roebuck & Co., supra, the Circuit Court of Appeals for the Eighth Circuit, considering the said Caesar patent held it invalid for lack of invention over the Modine unit heaters. Such a Modine unit is illustrated at page 586 of 44 F.(2d).

Consideration of the prior art shows that it was old in the art to include in the heater a pair of spaced headers with a radiator between them, and inlet and outlet openings located in the diagonally opposite corners of the headers.

In fact, it clearly appears from the prior art that, long prior to any date the patentee of the patent in suit can claim, the location of the pipes was a matter of convenience.

In Ford Model A heater (Exhibit H) manufactured and sold by Tropic-Aire, Inc., one pipe is shown in the center of one header and the other pipe in the corner of the other header. The evidence shows that it was originally planned to make the Ford heater with the pipes located in diagonally opposite corners, but the pipes were moved as a matter of convenience because the hose would come too close to the exhaust manifold.

In the Butterfield Heater Exhibit G, the pipes were in diagonally opposite corners.

Prior to those heaters the pipes were located in the center of the tanks. From all of which it appears that there were shown all possible arrangements of pipe locations that could be made.

Plaintiff contends that a reading of the claim will clearly indicate that it is specific in character and is directed to a complete heater structure per se which is so built as to lend itself to mounting in either a vertical or horizontal position, but, even if that be so, there is nothing new that can be claimed by the plaintiff in the casing surrounding the heater, or the shutters at the front of it, or the motor mounting, or the bracket for mounting the heater on the dash.

The only claim to novelty that I can find is the location of the pipes in diagonally opposite corners of the headers, but it has been clearly shown in the prior art that no novelty resided in so locating the pipes but that their location was simply a matter of convenience.

I can find no invention in the claim in suit of the patent in suit, but merely the act of a skilled mechanic.

Defendant contends that Mr. Aufiero was not the original and first inventor of the subject matter of the patent in suit, and bases that contention on the testimony of Mr. Toepel, an electrical engineer, in the employ of the plaintiff, by whom he was called as a witness.

I have already found that there was no invention in the claim in suit of the patent in suit over the prior art, but that it was simply the work of a skilled mechanic. The evidence, however, does not satisfy me that the instructions to place the water connection pipes in the corners of the upper and lower tank heaters did not come to Mr. Toepel from Mr. Aufiero, but it is very clear that Mr. Toepel played a large part in the work as a skilled mechanic. That defense has not been sustained.

■ The claim in suit of the patent in suit is invalid for lack of invention over the prior art.

I have found that there was no anticipation and that opinion is not changed after consideration of the Butterfield Heater Exhibit G, the Rose Heater Exhibit I, and the Ford Model A Heater Exhibit H, as they do not in my opinion add anything to the prior art patents in evidence herein. While they do show, as do the prior art patents in evidence, that there was no invention over the prior art, there was such change in form that I cannot find the claim in suit of the patent in suit invalid, as contended by defendant, on the ground that the structure defined by claim 8 thereof had been in public use and on sale by Tropic-Aire, Inc., for more than two years prior to the filing date thereof.

■ Plaintiff places much reliance on what it describes as commercial background, intending thereby, as I understand it, to urge as a reason for sustaining the validity of the patent what is commonly called commercial success.

That as I understand it is to be considered only where there is doubt, but not

where there is no doubt that the patent is lacking in invention.

As I have said, I cannot find invention in the claim in suit of the patent in suit, and therefore commercial success, if such there be, cannot form the basis of establishing invention in this case.

Even if the alleged commercial background were to be considered in this case, it does not seem to me to be impressive.

The production of heaters by the entire industry increased from 375,000 in 1932 to 1,250,000 in 1935.

Plaintiff's sales increased from about 27,000 units in 1932, when it was a newcomer in the field, to about 228,000 in 1935.

It thus appears that the increase in sales by the plaintiff was not disproportionate to the increase in sales for the entire industry, therefore I am not convinced that the increase in plaintiff's business was due to the construction of the heaters covered by the patent in suit, because we must not lose sight of the fact that there was a 100 per cent. increase in the plaintiff's business from 1932 to 1933, although the construction of the patent in suit was not used.

A decree may be entered in favor of the defendant against the plaintiff dismissing the bill of complaint on the merits with costs.

Settle decree on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion for the assistance of the court as provided by rule 70½ of the Equity Rules and rule 11 of the Equity Rules of this court (28 U.S.C.A. following section 723).